**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Kelly Ann Riordan | : | |
| 200 Prospect Avenue | : | |
| Maywood, NJ 07607 | : | |
| | : | |
|        Plaintiff, | : | |
| | : | CIVIL ACTION NO.: |
|        v. | : | |
| | : | |
| Marywood University | : | |
| 2300 Adams Avenue | : | |
| Scranton, PA 18509 | : | |
| | : | |
| And | : | |
| | : | |
| Dr. Leonard Herman | : | |
| 2300 Adams Avenue | : | |
| Scranton, PA 18509 | : | Jury of Twelve (12) Jurors Demanded |
| | : | |
| And | : | |
| | : | |
| Diane Taylor | : | |
| 2300 Adams Avenue | : | |
| Scranton, PA 18509 | : | |
| | : | |
| And | : | |
| | : | |
| Ann Boland-Chase | : | |
| 2300 Adams Avenue | : | |
| Scranton, PA 18509 | : | |
| | : | |
| And | : | |
| | : | |
| Patricia Dunleavy | : | |
| 2300 Adams Avenue | : | |
| Scranton, PA 18509 | : | |
| | : | |
| And | : | |
| | : | |
| John Does, 1-10 | : | |
|        Defendants. | : | |

## FIRST AMENDED CIVIL ACTION COMPLAINT

**I. Jurisdiction**

1.  This is an action for an award of money damages, attorney's fees, and injunctive and other relief on behalf of Plaintiff, Kelly Ann Riordan ("Riordan"), a former student of Defendant, Marywood University ("University"), who has been harmed by the Defendant as a result of Defendant's employees' misconduct.

2.  In pertinent part, this action is brought under Title II and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq., and Section 504 of The Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §794, et seq.

**II.   Jurisdiction and Venue**

3.  Jurisdiction of this matter is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332; supplemental jurisdiction over Plaintiff's state law claims granted by 28 U.S.C. §1367.

4.  Venue lies in this judicial district in that the events that gave rise to this claim occurred here.

**III. Parties**

5.  Plaintiff, Kelly Ann Riordan, is an adult individual and citizen residing at the above captioned address.

6.  Defendant, Marywood University ("Marywood"), is an educational institution registered to transact business in the Commonwealth of Pennsylvania, with agents authorized to receive service of process at the above-listed address, providing instructional and educational services to students, which employs individual defendants, maintaining a principal place of business, citizenship and residency at the address above-captioned. Upon information and belief, Marywood is a recipient of federal, public financial assistance, funding and benefits. (See Docket No. 10, Exh. 1, Exh. B-"Notice of Discrimination").

7.  Defendant, Leonard Herman ("Herman"), at all times material, was and/or is a professor at University, pursuant to either official policy, custom or practice, in both an individual and/or official capacity. This Defendant was acting in concert and conspiracy with other employees/agents of

University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

8.      Defendant, Diane Taylor ("Taylor"), at all times material, was and/or is an employee of University, pursuant to either official policy, custom or practice, in both an individual and/or official capacity.  This Defendant was acting in concert and conspiracy with other employees/agents of University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

9.      Defendant, Ann Boland-Chase ("Chase"), at all times material, was and/or is an employee at University, pursuant to either official policy, custom or practice, in both an individual and/or official capacity.  This Defendant was acting in concert and conspiracy with other employees/agents of University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

10.     Defendant, Patricia Dunleavy ("Dunleavy"), at all times material, was and/or is an employee at University, pursuant to either official policy, custom or practice, in both an individual and/or official capacity.  This Defendant was acting in concert and conspiracy with other employees/agents of University, aiding and abetting same, maintaining a principal place of business, citizenship and residency at the address above-captioned.

11.     Defendants, John Does, 1-10, at all times material, was and/or is employees of Marywood, acting under color of state law, pursuant to either the official policy, custom or practice in both an individual and/or official capacity.  This Defendant was acting in concert and conspiracy with other employees/agents of Marywood, aiding and abetting same.

**IV.  Facts**

12.     At or around the time of her birth, Plaintiff was diagnosed with Turner's Syndrome.

13.     Turner's Syndrome is a genetic condition in which part or all of a sex chromosome is missing, with symptoms include learning disabilities, anxiety disorders, and developmental problems.

14.     At all times material, Plaintiff was and is classified as learning disabled.

15.     Turners Syndrome substantially limits plaintiff and is a recognized disease within the ADA and Rehabilitation Act.

16.     Plaintiff enrolled as an undergraduate freshman at University, having received an approximate $12,000.00 scholarship from University.

17.     On or about May 24, 2007, Plaintiff advised University of her classification as learning disabled and requested accommodations, including, extended test taking time, tutoring, and note taking.

18.     Upon her enrollment, Plaintiff informed University of Plaintiff's diagnosis and learning disabilities and requested accommodation in the form of extended time for testing in her courses, through its employee believed to be named, Defendant, Diane Taylor, Assistant Director of Housing and Residence Life ("Taylor").

19.     In or around August 2007, Plaintiff again requested accommodations from University through Taylor.

20.     On or about September 4, 2007, Plaintiff again requested one on one tutoring.

21.     At no time did University or Taylor request additional information from Plaintiff regarding her accommodation requests.

22.     Despite Plaintiff's request, no tutoring was available for Plaintiff.

23.     Upon information and belief, University provides tutors on a first come, first serve request and does not make learning disabled students, including Plaintiff, a priority in supplying tutors.

24.     Defendant, Herman, refused to provide Plaintiff with accommodations in the chemistry course Plaintiff enrolled ("class").

25.     Herman's class included periodic quizzes constituting 50% of the grade for the class, which Herman failed to grant Plaintiff additional time.

26.     Herman told Plaintiff that Herman previously "had students like you, and they only needed extended testing on midterms and finals."

27.     On or about September 12, 2007, Herman gave his class a quiz, which Plaintiff did not receive accommodation and Plaintiff was unhappy with her subsequent grade, which was approximately 87.5%.

28.     Plaintiff complained to Herman, and Herman responded by saying that it would be unfair to the other students to allow Plaintiff extra testing time.

29.     On or about September 26, 2007, Herman administered another quiz in the class and failed to give Plaintiff any type of accommodation.

30.     Plaintiff was again unhappy with her grade, approximately 65%, and complained to Herman.

31.     Herman responded by stating that he would allow Plaintiff to drop one (1) quiz from her final grade at the end of the semester.

32.     On or about October 1, 2007, Herman administered another quiz in the class and failed to give Plaintiff any type of accommodation.

33.     Plaintiff was again unhappy with her grade, approximately 55%, and complained to Herman.

34.     Herman responded by stating that Plaintiff should see her academic advisor and drop Herman's course.

35.     On or about October 3, 2007, Plaintiff advised her father, Edmund Riordan (non-party) of Herman's failure to accommodate.

36.     Plaintiff and Riordan both contacted Taylor to complain about Herman's failure to accommodate.

37.     Taylor refused to intervene with Herman, instead Taylor directed Plaintiff to speak directly with Herman, increasing Plaintiff's anxiety level.

38.     Herman than advised Plaintiff that Plaintiff could have extended testing time but, as a result, would miss a portion of the lecture.

39.     Herman's quizzes were given during approximately twenty (20) minutes in the beginning of his lecture.

40.     Herman would allow Plaintiff to take the quiz at a different location during his lecture.

41.     This was unacceptable to Plaintiff, as the proposed solution would cause Plaintiff additional hardships.

5

42. Plaintiff continued to report Herman's non-compliance with accommodations to Taylor; in response Taylor again refused to intervene and proposed Plaintiff get a note-taker for the portions of Herman's lecture that Plaintiff would miss per Herman's proposal.

43. This proposal was unacceptable to Plaintiff, as it would cause Plaintiff additional hardship in learning the course material.

44. Riordan attempted multiple times to contact Taylor.

45. Taylor refuses to return Riordan's phone calls, instead telling Plaintiff that Plaintiff can handle this situation on her own, increasing Plaintiff's anxiety and stress level

46. Unable to resolve the issue with Taylor, Riordan complained to the Assistant Vice President for Human Resources, Patricia Dunleavy.

47. Dunleavy referred Riordan to Ann Boland-Chase, Vice President for Enrollment Management.

48. Riordan advised Boland-Chase of University's failure to accommodate with additional testing time, location and tutoring.

49. Riordan further advised Boland-Chase that the stress caused by the failure to accommodate has caused Plaintiff's anxieties to be worsened and was affecting Plaintiff's grades in other courses and social interactions.

50. On or about October 15, 2007, Boland-Chase verbally advises Plaintiff and Riordan that Plaintiff was to receive the time and tutoring accommodations.

51. On or about November 12, 2007, the three (3) quiz grades from Herman were expunged.

52. At or around the same time, Plaintiff's roommate living situation had begun to deteriorate.

53. On or about October 31, 2007, Plaintiff reported a suicide threat and a death threat against Plaintiff made by Plaintiff's roommate, Kerrianne Goldberg (K.G.) to her therapist, Tracy Isaac.

54. Upon information and belief, the threats were made in response to Plaintiff's heightened anxiety levels in dealing with Herman.

55. Rather than report the threat to security, Isaac reported the threat to Sara Rothenberger, the Assistant Director of Housing and Residents Life.

56. Due to the threats and living situation, Plaintiff was transferred to another dorm room.

57. On or about November 1, 2007, Rothenberger conducted an investigation into the threats, and in the process issued a "no contact" order on Kerrianne and two (2) other students.

58. At this time, Plaintiff had not been interviewed by Rothenberger nor was Plaintiff informed about the no contact order.

59. Plaintiff was told of the no contact order by her peers, who, due to Rothenberger's actions, socially rejected Plaintiff.

60. This social rejection further exacerbated Plaintiff's anxiety.

61. On or about November 7, 2007, Plaintiff had a meeting with Rothenberger during which Rothenberger interviewed and badgered Plaintiff to the point that Plaintiff is in tears and forced to accept the no contact order.

62. During the meeting, Plaintiff had attempted to resist the no contact order due to the effect from Plaintiff's peers, only to have Rothenberger ask "Do you want to hurt yourself?"

63. Plaintiff was in fear for her life due to K.G.'s threats and Plaintiff's anxiety was further exacerbated by Rothenberger's actions.

64. Due to the above, Plaintiff missed classes, tests, and was unable to study or concentrate.

65. Plaintiff was unable to complete the semester, and was advised that she can apply for incomplete grades or walk away and take failing grades.

66. Plaintiff was not advised that she can apply for a leave of absence due to her medical problems.

67. On or about December 14, 2007, Plaintiff filed a civil rights complaint in-house at Marywood.

68. On or about February 11, 2008, Marywood denied Plaintiff's complaint without speaking to Plaintiff or allowing Plaintiff to present witnesses.

69. In or around April 2008, Plaintiff discovered that she should have had the option to apply for a leave of absence.

70. Due to the above incidents, Plaintiff was unable to return to University.

71.     Plaintiff applied to other colleges and universities as a transfer student, where the poor grades Plaintiff received at University caused Plaintiff to have trouble finding a new undergraduate program.

72.     Plaintiff was eventually accepted by William Patterson University; however Plaintiff does not qualify for the nursing program due to her grades from University.

73.     Additionally, Plaintiff lost the scholarship that she had received to attend University.

74.     The aforesaid damages, *inter alia*, constitute a likelihood of future discrimination to Plaintiff arising as a result of the misconduct of Defendants.

### IV.     Prayer for Relief

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for compensatory damages in an amount in excess of $75,000.00, plus punitive damages against Defendants individually, jointly and/or severally, attorney's fees and costs, statutory, injunctive and such other relief and costs this Honorable Court deems necessary and just.

Weisberg Law, P.C.

/s/ Matthew B. Weisberg
MATTHEW B. WEISBERG
Attorney for Plaintiffs